UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ANTHONY WAKLEY,                    )
                                   )
            Plaintiff,             )
                                   )
      v.                           )      No. 1:24-cv-00508-JPH-MG
                                   )
THE TRUSTEES OF INDIANA            )
UNIVERSITY,                        )
                                   )
            Defendant.             )

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Anthony Wakley alleges that Indiana University unlawfully interfered with his Family and Medical Leave Act ("FMLA") rights and retaliated against him for seeking FMLA leave.  The University has filed a motion for summary judgment.  Dkt. [28].  For the reasons below, that motion is **GRANTED**.

**I.**
**Facts and Background**

Because the University has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

Mr. Wakley began working as a financial analyst at Indiana University's Indianapolis campus in 2012.  Dkt. 30-1 at 10, 16 (Wakley Dep.).  Mr. Wakley worked in-person from 2012 until 2020, when the University instituted a fully remote work policy in response to the COVID-19 pandemic.  *Id.* at 20–21.

1

Around October 2023, the University informed finance and administrative staff that effective January 1, 2024, they would need to return to office in-person.  Dkts. 30-13 at 1–2 (Taylor Aff. ¶ 4).  Under this policy, employees were required to work in-person "three days a week, and they could not work remotely on consecutive days."  *Id.*  Mr. Wakley's direct supervisor, Joe Goins, also told Mr. Wakley that he needed to return to work in person starting January 1, 2024.  Dkt. 30-2 at 2 (Goins Aff. ¶ 5)

In November 2023, Mr. Wakley's mother began to have health issues.  Dkt. 30-1 at 29 (Wakley Dep.).  Her condition worsened in December, and she was hospitalized in January 2024.  *Id.*  On a phone call in November, Mr. Wakley told Mr. Goins that his mother "was doing horribly.  She couldn't move from her bed to the couch or the couch to the kitchen.  She couldn't really care for herself."  *Id.* at 36–37.  Mr. Wakley said that he "needed to get down to figure out what's going on with my mom and take care of her."  *Id.*  Mr. Goins responded that he "would have to look into it and get back" to Mr. Wakley.  *Id.*  In December, Mr. Wakley and Mr. Goins talked on the phone about FMLA leave, specifically "what to do, how to do it, what the university would need, and how to navigate that."  *Id.* at 32.

Mr. Wakley returned to work on January 2, 2024, but his office did not have the necessary equipment for his job duties.  *Id.* at 75.  After that, Mr. Wakley did not return to work in person.  Dkt. 30-2 at 2 (Goins Aff. ¶ 6).  Beginning on January 10, Mr. Wakley sent a series of emails and grievances to various University employees about the in-person requirement.  *See* dkts. 30-3;

30-4; 30-5; 30-8; 30-10; 30-11.  In his first email to Mr. Goins, Mr. Wakley said that "[a]t this time, I cannot commit to requested 3 days per week on campus . . . [t]he decision to enforce a return to the office . . . significantly impacts my professional, personal, emotional, mental, and economic well-being."  Dkt. 30-3 at 2–3.

Two days later, Mr. Wakley submitted an official grievance to the University's Human Resources, dkt. 30-4, and emailed Vice Chancellor Camy Broeker with concerns about the in-person mandate, dkt. 30-5 at 2.  On January 19, 2024, Mr. Wakley emailed Mr. Goins, saying that until his grievance was addressed, he "plan[ned] to continue to complete my duties and work as I have for the last 3 years working remotely and coming in for the occasional in person meeting as needed."  Dkt. 30-7 at 1.

During the return to in-person work, the University required employees to submit Remote Work Arrangement ("RWA") forms to confirm the three-day in-office requirement.  Dkt. 30-13 at 3 (Taylor Aff. ¶ 11).  Mr. Wakley submitted an RWA form, but Human Resource Director Yolanda Taylor emailed Mr. Wakley that his form was "pending" because the "information entered . . . is either blank or entered incorrectly."  Dkt. 30-14 at 1.  On January 25, 2024, Mr. Goins reminded Mr. Wakley to submit a compliant RWA form by the next day, and forwarded him an email saying that Mr. Wakley "is directed to start working at least 3 days per week in the office starting Monday 1/29/24."  Dkt. 30-20 at 2.  Mr. Wakley responded that, because of his unresolved grievance, his "intention is to maintain the remote work schedule . . . which entails

3

working remotely for five days per week and attending in-person meetings as necessary." *Id.* at 1.

On January 30, Mr. Goins again emailed Mr. Wakley instructing him to complete an RWA form and work the rest of the week in-person, warning that "[f]ailure to do so could result in corrective action taken." Dkt. 30-11 at 2. Mr. Wakley responded that he was "not amenable to altering my current work arrangement and I cannot consent to any changes that would alter the successful work pattern I've maintained. . . . My stance is rooted in a fundamental and principled disagreement with the rationale applied to my position, which I believe contradicts the University's professed values." *Id.* at 1.

On January 31, 2024, Mr. Wakley used a sick day. Dkt. 30-1 at 112; dkt. 35-4 at 2. The same day, Ms. Taylor discussed Mr. Wakley's employment with University Employee Relations. Dkt. 30-13 at 4 (Taylor Aff. ¶ 18). Based on Mr. Wakley's "continued refusal to submit a compliant RWA and to return to work in person," the group decided to end Mr. Wakley's employment, classifying his conduct as a "constructive resignation." *Id.* at 4–5.

The next day—after the termination decision was made but about three hours before Mr. Wakley was informed of it—Mr. Wakley submitted an RWA form listing a multitude of reasons why he should be allowed to work fully remotely. Dkt. 30-13 at 4–5 (Taylor Aff. ¶¶ 18–21); dkt. 35-5 at 2–3. One reason was that his mother "is experiencing a significant decline in her health and was recently hospitalized. Given her deteriorating condition, it is expected that she soon may require supervised care. This may involve moving her in

4

with us or my needing to temporarily live with her, depending on her condition[.]"  *Id.* at 3.

> That afternoon, Mr. Goins emailed Mr. Wakley his termination letter:

> As of January 2, 2024, it was expected that you would return to the office three days a week, with the option to work remotely for two days per week, in accordance with the expectation communicated to you by your supervisor.  Regrettably, you have declined to return to working on campus, which is a fundamental condition of your employment.  Given your unwillingness to meet these expectations, we must consider this as a voluntary resignation from your position, effective February 1, 2024.  You will have a conditional rehire status.

Dkt. 30-12 at 1.  In response, Mr. Wakley emailed Ms. Taylor that he did not voluntarily resign from his position and planned to continue working unless he was terminated.  Dkt. 35-6 at 2.

The next day, Mr. Wakley submitted a grievance to the University's Office of Institutional Equity about his termination.  Dkt. 30-15 at 2.  On February 5, 2024, Mr. Wakley submitted a final grievance to the University's Human Resources department, saying that he was terminated because of the in-person work requirement, but his office did not have the necessary equipment.  Dkt. 30-18.  One of his requests was for "the ability to seek an FMLA accommodation which I have valid reasons for that I have discussed with my supervisor weeks ago."  *Id.* at 3.  He also requested a similar remote arrangement to another employee, Dan McGee, who was permitted to use paid time off until his retirement date instead of returning in-person.  *Id.*; dkt. 30-13 at 7; dkt. 30-1 at 145.

Mr. Wakley filed this suit in March 2024, alleging FMLA interference and retaliation.  Dkt. 1 at 3–4 (Compl. ¶¶ 20–30).  The University filed a motion for summary judgment.  Dkt. 28.

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor."  *Zerante*, 555 F.3d at 584.

## III.
## Analysis

The FMLA gives eligible employees the right to take leave for certain medical and family reasons.  *Ziccarelli v. Dart*, 35 F.4th 1079, 1089 (7th Cir. 2022) (citing 29 U.S.C. § 2612(a)(1)).  It also "prohibits covered employers from (i) interfering with, restraining, or denying the exercise of FMLA rights; and (ii) discriminating or retaliating against employees for exercising FMLA rights."  *Id.* (explaining 29 U.S.C. § 2615(a)(1), (a)(2)).

6

### A. FMLA Retaliation

To prevail on his retaliation claim, Mr. Wakley "must show that (1) he engaged in FMLA-protected activity; (2) his employer took an adverse employment action against him; and (3) there is a causal connection between the two." *Paterakos v. City of Chicago*, 147 F.4th 787, 800 (7th Cir. 2025).

The University argues that it's entitled to summary judgment on causation because the undisputed evidence is that Mr. Wakley was terminated because he refused to return to work as required. Dkt. 29 at 19–21. Mr. Wakley responds that the University terminated him because he inquired about FMLA leave to take care of his mother. Dkt. 36 at 23. He also contends that the University's reasons for his termination are pretext for discriminatory intent. Dkt. 36 at 24–27.[1]

The causation element "requires proof of discriminatory intent—evidence that the employer was acting under a prohibited animus." *Chitwood v. Ascension Health All.*, 168 F.4th 493, 499 (7th Cir. 2026). In *Chitwood,* Ascension required Ms. Chitwood to return to work after her FMLA leave ended. *Id.* at 495, 499. "When Chitwood failed to return to work as instructed, she was terminated—just as Ascension had warned." *Id.* The Seventh Circuit

---

[1] Mr. Wakley references Seventh Circuit language that the causation element can be satisfied through a "convincing mosaic of circumstantial evidence." Dkt. 36 at 23 (quoting *Pagel v. TIN Inc.,* 695 F.3d 622, 631 (7th Cir. 2012)). More recently, however, the Seventh Circuit disclaimed that language and instructed courts not to separate "direct" and "indirect" evidence in employment discrimination suits. *Ortiz v. Werner Enterprises, Inc.,* 834 F.3d 760, 765–66 (7th Cir. 2016). The Court therefore considers the designated evidence "as a whole" to determine if it permits a reasonable jury to find causation. *Id.* at 765.

affirmed summary judgment for Ascension on Ms. Chitwood's retaliation claim because there was no evidence that Ms. Chitwood would have been terminated if she had "simply reported to work as directed." *Id.* Instead, the designated evidence was "clear that it was Chitwood's failure to return to work as directed—not her prior use of FMLA leave—that caused her termination." *Id.*

This case is a dead ringer for *Chitwood*—the designated evidence "is clear" that the University terminated Mr. Wakley for his refusal to return to work as directed. *Id.* Mr. Wakley admits that he did not return to the office starting on January 2, 2024 as required, and instead sent numerous emails and grievances disagreeing with the mandate and insisting that he was "not amenable to altering [his] current work arrangement." Dkt. 30-10 at 1–2; dkt. 36 at 27–28. Mr. Goins then warned Mr. Wakley that a failure to return would result in corrective action. Dkt. 30-10 at 2. Mr. Wakley still did not return, and was terminated. Dkt. 30-2 at 4 (Goins Aff. ¶ 19); dkt. 30-12 at 1. As in *Chitwood*, there is no designated evidence allowing the inference that Mr. Wakley "*still* would have been terminated" if he had returned to the office as required. *Chitwood*, 168 F.4th at 499.

None of Mr. Wakley's arguments distinguish *Chitwood* or show a triable issue of fact on causation. First, he argues that he continued to work remotely because he did not hear back from the University about "his eligibility to take FMLA leave to take care of his mother." Dkt. 36 at 28. But he designates no evidence in support, as required. Fed. R. Civ. P. 56(c)(1); S.D. Ind. L.R. 56-1(e). And no reasonable jury could credit that argument because Mr. Wakley did not

8

refer to his mother's health concerns in any of his pre-termination objections to returning to work.  *See, e.g.*, dkt. 30-3 at 2–3; dkt. 30-4; dkt. 30-5 at 2; dkt. 30-7 at 1.

Next, Mr. Wakley argues that retaliatory animus can be inferred from suspicious timing and ambiguous statements surrounding his termination. Dkt. 36 at 24–26.  For suspicious timing, he relies on his conversations with Mr. Goins about his mother's health condition and his final RWA, which he submitted three hours before he was informed of his termination.  Dkts. 36 at 24–25.  The final RWA cannot support causation, however, because it is undisputed that the termination decision had been made before Mr. Wakley submitted it.  Dkt. 30-13 at 4 (Taylor Aff. ¶ 18); *Chitwood,* 168 F.4th at 499 (A causation argument based on evidence from after the termination decision "is a non-starter.").  And Mr. Wakley's conversations with Mr. Goins about his mother's health are insufficient to show a triable issue of fact on causation. *Curtis v. Costco Wholesale Corp.,* 807 F.3d 215,  221 (7th Cir. 2015) ("Suspicious timing by itself is rarely enough to overcome summary judgment.").  A month and a half passed between the last conversation with Mr. Goins and the termination decision, and Mr. Wakley has designated no evidence connecting that conversation with his eventual termination.  *See Lohmeier v. Gottlieb Mem'l Hosp.,* 147 F.4th 817, 830 (finding that a one-day gap between FMLA protected activity and termination was insufficient to show retaliation.).

Similarly, the designated evidence does not show that the University offered ambiguous reasons for Mr. Wakley's termination that could allow a reasonable jury to find causation.  The University has designated evidence that it terminated Mr. Wakley because he "declined to return to working on campus, which is a fundamental condition of employment."  Dkt. 30-12 at 1.  Mr. Wakley does not dispute that he declined multiple times to return to the office, including two days before his termination when he told the University that he was not "amenable to altering my current work arrangement."  Dkt. 30-11 at 1. While Mr. Wakley argues that the University should have given him a written warning instead of termination, courts "do not tell employers how to discipline employees; rather, [they] ensure that the process is not discriminatory."  *Kohls v. Beverly Enter Wis., Inc.*, 259 F.3d 799, 805 (7th Cir. 2001).  Here, the designated evidence does not allow an inference of retaliation because the University was "steadfast in its basis for terminating [Mr. Wakley]: [his] failure to return to work."  *Chitwood*, 168 F.4th at 500.

Finally, Mr. Wakley argues that a reasonable jury could find retaliation because the University required him to return to work in-person while a similarly situated employee continued to work remotely.  Dkt. 36 at 26–27.  To determine if two employees are similarly situated, "a court looks at all the relevant factors, which often include whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications."  *Hull v. Stoughton Trailers, LLC*, 445 F.3d 949, 952 (7th Cir.

10

2006).  Mr. Wakley has not made that showing because he admits that the employee he identifies as a comparator, Dan McGee, had many years of service and was permitted to work remotely until his set retirement date only a few months later.  Dkt. 36 at 26; dkt. 35-8 at 5.  Mr. Wakley also designates no evidence of Mr. McGee's job title, responsibilities, or whether he was subject to the same standards and supervisors.  Dkt. 35-8 at 4-5; dkt. 36 at 27; *see Hull*, 445 F.3d at 952.[2]

In sum, Mr. Wakley has not designated evidence allowing a reasonable jury to infer a causal connection between his FMLA inquiries and his termination.  The University's motion for summary judgment on Mr. Wakley's retaliation claim is therefore **GRANTED.**

### C. FMLA Interference

The University argues that it's entitled to summary judgment on Mr. Wakley's FMLA interference claim because he did not provide notice of his intent to take FMLA leave and because he has not suffered recoverable damages.  Dkt. 29 at 17, 22.  For damages, Mr. Wakley responds only that he suffered lost wages and benefits from his termination.  Dkt. 36 at 29–30.

The FMLA allows employees to recover lost "wages, salary, employment benefits, or other compensation" or other "'actual monetary losses' that result

---

[2] Mr. Wakley briefly argues that similarly situated employees were treated more favorably than him because his in-office workspace did not have necessary equipment, but he does not designate evidence connecting this argument to his FMLA request. Dkt. 36 at 27.  Moreover, he designates no evidence about other employees, including whether they requested FMLA leave.  *See Hull*, 445 F.3d at 952 ("Hull fails to present any evidence on the critical independent variable here: FMLA leave (i.e., which comparators did (or did not) take FMLA leave).").

11

from an employer's FMLA violation." *Trahanas v. Northwestern Univ.*, 64 F.4th 842, 857 (7th Cir. 2023) (citing 29 U.S.C. § 2617(a)(1)(A)(i)(I), (II)). It also allows "equitable relief as may be appropriate, including . . . reinstatement." *Hickey v. Protective Life Corp.*, 988 F.3d 380, 388 (7th Cir. 2021) (citing 29 U.S.C. § 2617(a)(1)(B)); *see Trahanas*, 64 F.4th at 858 ("FMLA damages don't include emotional distress and punitive damages."). "To survive summary judgment, a plaintiff must come forward with evidence from which a jury could conclude that she suffered damages attributable to one of the adverse actions for which the FMLA provides relief." *Trahanas*, 64 F.4th at 858.

Here, Mr. Wakley argues only that he suffered damages from his termination, dkt. 36 at 17, 30, but as explained above, no reasonable jury could find that his termination violated the FMLA. And since those alleged damages are from Mr. Wakley's termination, no reasonable jury could find that they "result[ed] from the alleged interference," as required for this claim. *Hickey*, 988 F.3d at 387 (explaining that FMLA damages are "limited" and "requir[e] a direct connection" to the harm suffered). In fact, Mr. Wakley remained employed and received full compensation, benefits, and wages until his termination. *See* dkt. 30-13 at 7 (Taylor Aff. ¶ 31); *see Hickey*, 988 F.3d at 389 ("[A]lthough Mr. Hickey eventually may have suffered damages had he remained employed with Protective, he had not suffered any compensable damages [under the FMLA] at the time his employment was terminated.").

Mr. Wakley also notes that the FMLA allows reinstatement. Dkt. 36 at 30–31. But reinstatement is not available on Mr. Wakley's FMLA interference

12

claim because no reasonable jury could find that his termination was caused by any FMLA protected activity. *Hickey*, 988 F.3d at 389 ("Because the termination of his employment was unrelated to any activity protected by the [FMLA], the statute's remedial provisions cannot be invoked to require his reinstatement.").

In short, Mr. Wakley's argument and designated evidence on damages relate to only his termination. Dkt. 36 at 17, 30. He therefore has not "show[n] that he suffered damage . . . from the alleged interference" that "is redressable" under the FLMA. *Hickey*, 988 F.3d at 387. "In the absence of such evidence, summary judgment for the employer is appropriate." *Id.* The University's motion for summary judgment is **GRANTED** on Mr. Wakley's FMLA interference claim.

## IV.
## Conclusion

The University's motion for summary judgment is **GRANTED**. Dkt. [28]. Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 3/23/2026

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All Electronically Registered Counsel.